IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY ABRAHAM,

     Plaintiff,

v.                                                                    Case No. 24-2354-DDC-TJJ

MERCEDES-BENZ USA, LLC, et al.,

     Defendants.

## MEMORANDUM AND ORDER

This dispute involves a vehicle purchase gone sour. Plaintiff Gary Abraham[1] claims

defendants sold him a lemon. Plaintiff alleges defendants Mercedes-Benz USA, LLC (MBUSA)

and Mercedes-Benz Financial Services USA, LLC (MBFS) violated Kan. Stat. Ann. § 50-645 by

selling him a defective vehicle. And he argues defendants' conduct is negligent under the tort

doctrine known as res ipsa loquitur. He claims defendants' conduct caused him mental distress

and seeks damages and nonmonetary relief. Doc. 1-1 at 7 (Pet. ¶ VII).

This case comes to the court now on plaintiff's Motion to Remand (Doc. 18) and

defendants' Motions to Dismiss (Doc. 11; Doc. 13). First, take the remand motion. Defendant

MBUSA removed this action from Kansas state court on August 13, 2024. Doc. 1. MBUSA

asserts that the parties are completely diverse and the amount in controversy exceeds $75,000,

---

[1]     Because plaintiff appears pro se, the court construes his pleadings liberally and holds them "to a
less stringent standard than formal pleadings drafted by lawyers." *See Hall v. Bellmon*, 935 F.2d 1106,
1110 (10th Cir. 1991). But the court can't assume the role of his advocate. *Id.* And plaintiff's pro se
status doesn't excuse him from "the burden of alleging sufficient facts on which a recognized legal claim
could be based." *Id.* Simply put, the court can't "supply additional factual allegations to round out [the
pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d
1170, 1173–74 (10th Cir. 1997).

allegations sufficient to establish the court's subject matter jurisdiction. *Id.* at 1–3. Plaintiff's motion argues that neither diversity jurisdiction requirement is satisfied here. Doc. 18 at 1–2.

For starters, plaintiff asserts that MBUSA's Notice of Removal (Doc. 1) doesn't allege the LLCs' citizenship adequately. *Id.* Both defendants rebut plaintiff's argument. They've alleged plaintiff is a citizen of Kansas and each LLC's sole member is incorporated in Delaware with its principal place of business in Michigan. Doc. 20 at 1–2. So, defendants argue, the parties are completely diverse. *Id.* at 2. And, as explained in detail below, the court agrees with them.

But the amount in controversy is a more challenging proposition. Plaintiff's state court Petition is ambiguous about the relief plaintiff seeks. Adding up just the *numbers* in plaintiff's request for relief reaches an amount in controversy of $74,287.32. Defendants cite plaintiff's requested nonmonetary and unenumerated damages and conclude: "these nonmonetized demands for recovery elevate the amount in controversy well in excess of the $75,000 jurisdictional limit." Doc. 20 at 3. Plaintiff, for his part, urges the court to read his Petition as requesting just $50,000. Doc. 18 at 2; Doc. 21 at 1. And, plaintiff argues, defendants "did not offer any evidence of [their] allegation that the amount in controversy exceeds the jurisdictional minimum[.]" Doc. 18 at 2.

The court concludes defendants have shouldered their burden to establish subject matter jurisdiction. So, it denies plaintiff's Motion to Remand (Doc. 18).

After removing the case, defendants filed Motions to Dismiss (Doc. 11; Doc. 13). Defendants argue plaintiff has failed to state a lemon law claim. Doc. 11 at 1; Doc. 13 at 1. For one thing, defendants assert, plaintiff hasn't provided supporting facts for each element of Kan. Stat. Ann. § 50-645. Doc. 12 at 3. For another, defendants emphasize that they provided

plaintiff all the relief available under the Kansas lemon law by repairing his vehicle and allowing plaintiff to trade it for another one. *Id.* And, MBFS argues that even if plaintiff has alleged a lemon law claim, the lemon law doesn't impose liability on non-manufacturers. Doc. 14 at 4.

The court denies MBUSA's Motion to Dismiss (Doc. 11) and grants in part and denies in part MBFS's Motion to Dismiss (Doc. 13). The court explains these decisions, below, but begins with a brief background.

## I.    Background

Plaintiff's state court Petition chronicles a vehicle purchase—one where plaintiff wound up with an allegedly defective Mercedes-Benz SUV. The court recounts, below, plaintiff's allegations from his Petition.

### *The Initial Purchase*

Plaintiff's story starts after he received an offer via email for a cash bonus on the purchase of a Mercedes. Doc. 1-1 at 2 (Pet. ¶ IV). Plaintiff asserts that defendants' "representative" bargained with him until he agreed to purchase a new electric Mercedes Benz EQE, sight unseen. *Id.* at 3 (Pet. ¶ IV); *id.* at 47 (Pl. Ex. H) (reflecting trade in of Jeep Grand Cherokee for Mercedes-Benz EQE350X4 on March 12, 2024). According to documents plaintiff attached to his Petition, it appears the vehicle's sale price was $80,400 and defendants leased it to plaintiff at an adjusted capital cost of $83,434.81. *Id.* Thereafter, the problems began.

### *Defects and Other Issues*

As a first sign that something was off, the EQE SUV arrived at the dealership two weeks too late. *Id.* at 3 (Pet. ¶ IV). Apparently, the SUV was in an accident. *Id.* Only then did plaintiff discover that the SUV wasn't brand new—it was a dealer's loaner vehicle with over 3,000 miles on the odometer. *Id.* The dealership serviced the vehicle for over 60 days to fix

damages from the accident, interior stains, and malfunctioning electrical components.  *Id.* at 3–4
(Pet. ¶ IV).  Once plaintiff secured the vehicle, the SUV trapped him inside three times.  *Id.* at 4
(Pet. ¶ IV).  And on some of those occasions, the dashboard displays flashed on and off while the
car alarm sounded.  *Id.*

### *Aftermath*

At some point along the way, plaintiff decided he didn't want the SUV.  *Id.* at 3 (Pet.
¶ IV) (stating that he "was very transparent" about not wanting the SUV on March 12, March 14,
and April 6, 2024).  But defendants maintained that the SUV belonged to plaintiff.  *Id.*  As a
result, defendants' customer service directed plaintiff to the mechanic service department to see
if defendant would repurchase the SUV under Kansas's lemon laws.  *Id.*  Plaintiff aired his
grievances to the dealership, defendants, and the Better Business Bureau.  *Id.* at 4 (Pet. ¶ IV).
Defendants ignored plaintiff's request for arbitration.  *Id.*

Plaintiff alleges that in May 2024, "[d]efendant's representative finally, maliciously
plotted to take the said SUV back" but "failed to address the terms and conditions" for the
vehicle's return.  *Id.*  On July 6, 2024, plaintiff traded the Mercedes Benz EQE in exchange for a
new Mercedes Benz GLE.  *Id.* at 48–49 (Pl. Ex. I).  Around that same date, defendants voided
the EQE lease agreement.  *Id.* at 4 (Pet. ¶ IV).  But defendants didn't stop trying to collect
payment.  They continued their lease collection efforts by calling and emailing plaintiff
repeatedly.  *Id.*  And, plaintiff emphasizes, defendants failed to provide written information
about the details of his new GLE lease agreement.  *Id.* at 5 (Pet. ¶ V).  Plaintiff also asserts some
deficiencies in the new agreement.  For starters, defendants had paid three months' worth of his
original EQE lease payments but they added those payments back in when he entered the new
GLE lease agreement.  *Id.* at 4–5 (Pet. ¶¶ IV–V).  And defendants failed to account for the value

4

of his traded Jeep Grand Cherokee when creating the new GLE lease agreement.  *Id.* at 5 (Pet. ¶ V).

### *Procedural Posture*

Plaintiff then filed this lawsuit in state court.  *See id.* at 1 (Pet.) (dated July 9, 2024).  And defendants returned serve, filing a Notice of Removal (Doc. 1) with our court.  Less than one week later, plaintiff moved to remand the case.  Doc. 18.

Defendants also filed two Motions to Dismiss (Doc. 11; Doc. 13).  As addressed in the court's Order of January 9, 2025, plaintiff failed to file a timely response to defendants' Motions to Dismiss.  Doc. 27 at 1–2.  And plaintiff didn't satisfy the excusable neglect standard for an out-of-time response.  *Id.* at 6.  The court therefore doesn't evaluate plaintiff's proposed response in ruling the Motions to Dismiss.  But the court "cannot grant a defendant's motion to dismiss based exclusively on the plaintiff's failure to respond."  *Madkins v. T-Mobile Wireless Telephone Co.*, No. 15-3101-HLT-KGS, 2018 WL 6031189, at *3 (D. Kan. Nov. 16, 2018).  "[E]ven if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."  *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003).

So, the court evaluates all three motions on their merits, starting with plaintiff's Motion to Remand (Doc. 18).

### II.   Motion to Remand (Doc. 18)

Defendants may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]"  28 U.S.C. § 1441(a); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (explaining that "[o]nly state-

court actions that originally could have been filed in federal court may be removed to federal court by the defendant"). "This jurisdictional prerequisite to removal is an absolute, non-waivable requirement." *Hunt v. Lamb*, 427 F.3d 725, 726 (10th Cir. 2005) (internal quotation marks and citation omitted).

Federal courts have diversity jurisdiction to hear civil actions where (1) the parties are citizens of different states, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Because federal courts are courts of limited jurisdiction, the party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Defendants here invoke the court's diversity jurisdiction under 28 U.S.C. § 1332. *See* Doc. 1 at 1 (Notice of Removal).

Plaintiff's Motion to Remand challenges both diversity jurisdiction requirements. The court addresses each, in turn, starting with the parties' citizenship.

### A.    Complete Diversity of Citizenship

"Diversity jurisdiction requires complete diversity—no plaintiff may be a citizen of the same state as any defendant." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). To determine whether diversity jurisdiction exists, the court evaluates each litigant's state of citizenship. 28 U.S.C. § 1332(a). For a person, citizenship equals domicile. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014). "And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Id.* But the citizenship of business entities is more complicated. A limited liability company is a citizen of every state where its members are domiciled. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) ("Like every other circuit to consider this question, this court concludes an LLC, as an unincorporated association, takes the

6

citizenship of all its members."). A corporation is a citizen of both the state where incorporated and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1); *Newsome v. Gallacher*, 722 F.3d 1257, 1267 (10th Cir. 2013) ("[A] corporation is considered domiciled where it is incorporated and where it has its principal place of business, which the Supreme Court defines as the place where a corporation's officers direct, control, and coordinate the corporation's activities[.]" (internal quotation marks and citation omitted)).

Neither party disputes plaintiff's citizenship—Kansas. *See* Doc. 1 at 1 (defendants alleging plaintiff's domicile is Kansas); Doc. 18 at 1 (plaintiff arguing the parties aren't diverse because defendants are registered to do business in Kansas, thus implying his own Kansas citizenship). Plaintiff argues, however that the defendant LLCs failed to allege the citizenship of each member, "including the 5% in the State of Kansas[.]" Doc. 18 at 1. And plaintiff attaches several documents reflecting that defendants are foreign LLCs registered to do business in Kansas. *See* Doc. 18-1; Doc. 18-2; Doc. 18-3; Doc. 18-5. Plaintiff also attaches email correspondence with defense counsel asking for proof of citizenship for the "5% [of members] in Kansas." Doc. 18-4 at 1; *see also* Doc. 18-6 at 1. Plaintiff misunderstands defendants' citizenship allegations.[2]

Both defendants are LLCs, so their citizenship depends on the citizenship of their members. *Siloam Springs*, 781 F.3d at 1234. Defendants have alleged that each LLC's *sole* member is Mercedes-Benz North America Corporation. Doc. 1 at 2. And they've alleged that this parent corporation is incorporated in Delaware and has its principal place of business in

---

[2] To be sure, plaintiff's attachments created by the Kansas Secretary of State mention "[m]embers who own 5% or more of capital (Kansas LLCs only)[.]" Doc. 18-3 at 1; Doc. 18-5 at 1. But that field is left blank on the form. Doc. 18-3 at 1; Doc. 18-5 at 1. And defendants aren't Kansas LLCs. *See* Doc. 18-1 at 1 (indicating that Mercedes-Benz USA LLC is a foreign LLC); Doc. 18-2 at 1 (indicating Mercedes-Benz Financial Services USA LLC is a foreign LLC). The inquiry made by the Kansas Secretary of State doesn't imply that defendant LLCs have Kansas members.

Michigan. *Id.*; 28 U.S.C. § 1332(c)(1) (corporation is a citizen of state of incorporation and state of principal place of business). Plaintiff's 5% argument doesn't do anything to nullify defendants' citizenship allegations.

So, the citizenship scoreboard reads like this: on plaintiff's side of the caption—Kansas; on defendants' side of the caption—Delaware and Michigan. In sum, plaintiff is diverse from both defendants and this diversity satisfies the first requirement of § 1332 jurisdiction. Now, on to the second requirement, a more involved question.

### B.    Amount in Controversy

#### 1.    Legal Standard

The amount in controversy is "the sum demanded in good faith in the initial pleading." 28 U.S.C. § 1446(c)(2). If the complaint doesn't resolve the amount in controversy, "the allegations in the petition for removal" may provide guidance. *Lonnquist v. J.C. Penney Co.*, 421 F.2d 597, 599 (10th Cir. 1970). "[A] defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added) (citing 28 U.S.C. § 1446(a)). And when the amount in controversy goes unchallenged, that's the end of the story. But if the plaintiff challenges whether a removed action satisfies the amount in controversy requirement—as he does here—"[e]vidence establishing the amount is required." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)). "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. Defendants may "satisfy the preponderance standard" by showing "a reasonable probability that the controversy exceeds" the jurisdictional floor. *Owens v. Dart Cherokee Basin Operating Co.*, No. 12-4157-JAR-JPO, 2015 WL 7853939, at *3 (D. Kan. Dec.

3, 2015) (internal quotation marks and citation omitted).  Put differently, defendants must demonstrate that an amount beyond the jurisdictional minimum is "in play."  *McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008); *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1126 (10th Cir. 2021) (same).

To demonstrate the amount in controversy, defendants may:  introduce contentions, interrogatories, or admissions from the state court, calculate figures based on the complaint's allegations, reference plaintiff's estimates or settlement demands, or present affidavits about the cost of meeting plaintiff's demands.  *McPhail*, 529 F.3d at 954 (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006) (presenting non-exclusive list of methods to prove jurisdictional facts)).  The "question at this stage in the proceedings isn't what damages the plaintiff will *likely* prove but what a factfinder *might* conceivably lawfully award."  *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 912 (10th Cir. 2016) (emphasis in original).  This standard prevents "cases from bogging down in mini-trials before they've even begun."  *Id.* at 913.  Where defendants have established jurisdictional facts by a preponderance of the evidence, then they're "entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake."  *McPhail*, 529 F.3d at 954–5.

### 2.    Plaintiff's Petition

The court starts—as it must—with the relief requested by the Petition.  *See* 28 U.S.C. § 1446(c)(2) (stating that the amount in controversy is "the sum demanded in good faith in the initial pleading"); *City of Mulberry, Kan. v. BP Energy Co.*, No. 21-2227-SAC-JPO, 2021 WL 3472645, at *2 (D. Kan. Aug. 6, 2021) (same).  And the Petition here proves ambiguous.  At the start, plaintiff alleges "the amount in controversy is within the [state] Court[']s jurisdictional limits of 25,000.00 on each defendant[.]"  Doc. 1-1 at 1 (Pet. ¶ II).  So, plaintiff argues, he seeks

just $50,000. Doc. 18 at 2; Doc. 21 at 1. But the end of the Petition tells a different story.

Plaintiff's request for relief seeks damages of $5,300 for restoring his home, $18,987.32 for "trade in and payments and future payments[,] taxes[,] and fees[,]" and $25,000 from each defendant "for mental conditions[.]" Doc. 1-1 at 6–7 (Pet. ¶¶ VI–VII). Plaintiff also requests payment for "[m]edical expenses reasonably probable in the future[,]" pre- and post-judgment interest, and costs. *Id.* And he seeks nonmonetary relief too. *Id.* (asking court to "classif[y] [the] electrical SUV as a lemon[,]" and have "defendant re-negotiate the new terms and conditions on the Newest SUV").

Defendants argue the Petition "encompasses more than the $25,000 per Defendant that the Plaintiff alleges." Doc. 20 at 3. And with its unenumerated categories of damages and other relief, they assert, "the prayer for relief far exceeds the $75,000 threshold[.]" *Id.*

### 3.    Reaching the Jurisdictional Floor

A "complaint that presents a combination of facts and theories of recovery that may support a claim in excess of $75,000 can support removal." *McPhail*, 529 F.3d at 955. In *McPhail*, our Circuit explained that the "complaint itself set[] forth all of the underlying facts[.]" *Id.* at 957. And given the complaint's "allegations and the nature of the damages sought, the complaint on its face may be sufficient by itself to support removal." *Id.* (finding amount in controversy satisfied based on complaint and supporting correspondence included in notice of removal). The court evaluates next whether the Petition's content supports removal. First, the court addresses plaintiff's argument that he just seeks $50,000—$25,000 from each defendant. Then the court considers whether the Petition's allegations allow defendants to reach—by a preponderance of the evidence—the jurisdictional floor.

First, recall that plaintiff argues in his removal motion that he seeks just $50,000. Doc.

18 at 2.  But a review of his Petition reveals he sought $25,000 from each defendant solely for "mental conditions[.]"  Doc. 1-1 at 7 (Pet. ¶ VII).  He also included other categories of relief.[3]  Those other categories of relief put more than $25,000 from each defendant in play.  The court thus can't accept plaintiff's $50,000 argument.  One question remains, though:  Have defendants shown it's "reasonabl[y] probab[le] that the controversy exceeds" $75,000?  *Owens*, 2015 WL 7853939, at *3 (internal quotation marks and citation omitted).

The sum of the *numbers* alleged in plaintiff's Petition—$74,287.32—comes up just shy of the jurisdictional floor.  Doc. 1-1 at 6–7 (Pet. ¶¶ VI–VII) (listing figures for "mental conditions[,]" "[c]ost of removal of electrical equipment and restoring home[,]" and "actual damages in reference to trade in and payments and future payments").  So, there's a $713 gap.  And defendants fill that gap by estimating the value of the other relief sought in plaintiff's Petition.  *See McPhail*, 529 F.3d at 955 (concluding defendants properly could estimate "potential damages from the allegations in the complaint" to satisfy their removal burden).

Plaintiff requests a combination of monetary, declaratory, and injunctive relief.  *See* Doc. 1-1 at 6–7 (Pet. ¶ VII).  As defendants emphasize, "Plaintiff's prayer indicates that he seeks (a) all actual damages plead and proven; (b) pre-judgment and post-judgment interest at the highest

---

[3]      The court declines to construe plaintiff's remand motion or reply brief as a post-removal stipulation.  Where "the amount in controversy at the time of removal is unclear, a court may consider a post-removal stipulation expressly limiting the amount in controversy to one less than the jurisdictional threshold."  *Young v. Home Depot U.S.A., Inc.*, No. 18-2411-JWL, 2018 WL 5775658, at *2 (D. Kan. Nov. 2, 2018).  But here, plaintiff hasn't submitted an affidavit or offered any stipulation expressly limiting the relief he aspires to recover.

Even if the court read his motion and reply brief as stipulating to the amount of damages, plaintiff never addresses his requested nonmonetary relief.  His briefing asks the court to read the Petition in a fashion that omits portions of his prayer for relief.  The court can't allow plaintiff to avoid federal court jurisdiction in this fashion.  *See City of Mulberry, Kan.*, 2021 WL 3472645, at *2 ("[P]laintiffs cannot wait until after removal to reduce their damage claim under the jurisdictional amount by stipulation . . . . On the other hand, courts may consider a post-removal stipulation clarifying or confirming the amount in controversy.").

legal rate; (c) the cost of this action; (d) damages for mental conditions of $25,000 from each

Defendant; (e) [an order classifying] the electric SUV as a lemon; and (f) [requiring] Defendant

[to] re-negotiate the new terms and conditions on the newest SUV." Doc. 20 at 3. Counting all

those categories, defendants conclude, "the prayer for relief *far exceeds* the $75,000 threshold[.]"

*Id.* (emphasis added).

When declaratory or injunctive relief is at issue, "'the amount in controversy is measured

by the value of the object of the litigation.'" *Phelps Oil*, 5 F.4th at 1126 (quoting *Lovell v. State*

*Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006)). Our Circuit "look[s] to the

pecuniary effect an adverse declaration will have on either party to the lawsuit." *Id.* (internal

quotation marks and citation omitted). Defendants have emphasized plaintiff's asserted

categories of relief and the narrow gap between the explicitly asserted dollar figures and the

jurisdictional floor. They've singled out the lemon law declaratory relief—an example of one

category that would likely bridge the $713 gap. Doc. 20 at 3. Defendants cite plaintiff's Petition

and argue that classifying the vehicle as a "lemon" "would significantly impact the value of the

vehicle well in excess of the $712.68 difference[.]" *Id.* This estimate likely is correct, the court

finds. Documents attached to the Petition indicate that the vehicle's selling price was $80,400.

Doc. 1-1 at 47 (Pl. Ex. H). Given the vehicle's starting value (as indicated by its sale price),

devaluing the vehicle as a lemon likely would fell the $713 gap—and then some. Relying on

figures defendants calculated from the Petition, defendants thus shoulder their burden to prove "a

factfinder might conceivably lawfully award" over $75,000. *Hammond*, 844 F.3d at 912

(emphasis in original).

And while the parties don't highlight it, plaintiff asks the court to order defendants to

renegotiate the terms of his new lease on his new GLE SUV. Doc. 1-1 at 7 (Pet. ¶ VII). Plaintiff

never explains the result he envisions, but he challenges three months of disputed payments that he alleges defendants "added . . . back" to his new lease. *Id.* at 5 (Pet. ¶ V). Documents attached to plaintiff's Petition indicate that plaintiff's monthly payment on the new lease is $1,589.06. *Id.* at 49 (Pl. Ex. I). Just one of those controverted payments easily would exceed the $713 gap. As our Circuit has explained, "the complaint on its face may be sufficient by itself to support removal." *McPhail*, 529 F.3d at 957. This case is a likely candidate for that kind of treatment. The court is satisfied that the Petition likely places more than $75,000 in controversy.

Recall that once defendants shoulder their burden, they are "entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake." *McPhail*, 529 F.3d at 954. That is, "to justify dismissal under this standard 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Hammond*, 844 F.3d at 912 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). For his part, plaintiff doesn't rebut defendants' argument with evidence. *See generally* Doc. 21. He thus ignores his own obligation to "provide sufficient allegations." *Armour v. Transamerica Life Ins. Co.*, No. 10-2136-EFM, 2010 WL 4180459, at *4 (D. Kan. Oct. 20, 2010). Based on the face of the Petition itself, plaintiff's unspecified damages and other categories of relief more than likely push the amount in controversy well past $75,000. And plaintiff hasn't shown an alternative conclusion is "legally certain[.]" *See McPhail*, 529 F.3d at 954. Plaintiff simply asks the court to read his Petition differently, which the court concluded it can't do. It's far from certain that the amount in controversy falls short of $75,000. And without plaintiff having established that shortfall as a legal certainty, the governing law entitles defendants to stay put in federal court. The court therefore has subject matter jurisdiction over this case and denies plaintiff's Motion to Remand (Doc. 18).

### C. Miscellaneous Requests

The court also denies two other requests included in plaintiff's Motion to Remand.

*First*, plaintiff requested fees—in varying amounts—if the court granted the Motion to Remand. *See* Doc. 18 at 2 (requesting fees and costs of $893.12); Doc. 21 at 2 (requesting attorney's fees and costs of $1,896). Fees and costs aren't available when the court denies a motion to remand. 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses . . . incurred as a result of the removal."). Having declined to remand, the court must deny plaintiff's request for fees and costs.

*Second*, plaintiff requested an "emergency hearing" on the motion for the first time in his reply brief. Doc. 21 at 2. The court ordinarily "does not consider relief requested for the first time in a reply brief." *Linnebur v. United Telephone Ass'n*, No. 10-1379-RDR, 2011 WL 5103300, at *7 (D. Kan. Oct. 27, 2011); *United States v. McIntyre*, No. 11-2554-CM, 2013 WL 3877896, at *2 (D. Kan. July 26, 2013) ("[T]he court will not address a request for relief made for the first time in a party's reply brief."). What's more, the court has discretion to grant or deny a hearing. *See* D. Kan. Rule 7.2 ("The court *may* set any motion for oral argument or hearing at the request of a party or on its own initiative." (emphasis added)); *Saunders v. Big Blue Healthcare, Inc.*, 522 F. Supp. 3d 946, 965–66 (D. Kan. 2021) (rejecting defendant's request for jurisdictional hearing because it was "unclear what evidence Defendants believe[d would] be uncovered or presented" and hearing wouldn't "substantially assist the [c]ourt in deciding the motion to remand"). Given plaintiff's abundant opportunity to present evidence rebutting defendants' argument and show that the amount in controversy is legally certain to fall short, the court concludes a hearing won't assist its work. To order one would contradict Fed. R. Civ. P. 1's imperative "to secure" a "just" and "speedy" "determination of every action."

14

Exercising its discretion, the court concludes a hearing isn't necessary.

In sum, defendants have shouldered their burden to establish subject matter jurisdiction. The parties are completely diverse and the amount in controversy likely exceeds $75,000. Because the court has subject matter jurisdiction, defendants properly removed this case to federal court. So, the court denies plaintiff's Motion to Remand (Doc. 18). Next up: the Motions to Dismiss.

## III.    Motions to Dismiss (Docs. 11 and 13)

As best the court can tell, the Petition asserts two claims: a lemon law claim under Kan. Stat. Ann. § 50-645 and a negligence claim invoking the doctrine known as res ipsa loquitur. *See* Doc. 1-1 at 5 (Pet. ¶ V). Plaintiff doesn't distinguish between defendants when he states his causes of action, so the court assumes he asserts both claims against both defendants. Defendants move to dismiss plaintiff's Petition for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 11 at 1; Doc. 13 at 1. The court begins with the requisite legal standard, followed by an assessment of the viability for each claim.

### A.    Legal Standard

Under Rule 12(b)(6), a party may move to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When addressing a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, simply "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### B.    Lemon Law Claims

Plaintiff premises his first claim on Kansas's lemon law. This provision creates a cause of action specifically for consumers in the state who purchase new, but defective motor vehicles. If the vehicle doesn't conform to applicable warranties, and the consumer reports the nonconformity within the lesser of the warranty period or one year, the manufacturer must make the necessary repairs. Kan. Stat. Ann. § 50-645(b). If the manufacturer, its agents, or the dealer can't fix the vehicle within a reasonable number of attempts, the manufacturer either must: replace the vehicle with a comparable one or accept a return and refund the consumer for the purchase price less a reasonable use allowance. *Id.* § 50-645(c).

The statute *presumes* the manufacturer undertook a reasonable number of attempts at repair when the manufacturer receives actual notice of the nonconformity and: (1) the manufacturer, its agents, or authorized dealers tried to repair the issue more than four times (within the earlier of the warranty period or one year) and the nonconformity still exists; (2) the vehicle is "out of service" for repairs for 30 or more cumulative calendar days (within the earlier of the warranty period or one year); or (3) the manufacturer, its agents, or authorized dealers attempted to repair the nonconformity 10 or more times. *Id.* § 50-645(d). Below, the court

evaluates whether the Petition has asserted a viable Kansas lemon law claim against either defendant.  The court addresses defendants separately.  It concludes plaintiff plausibly has stated a claim against defendant MBUSA, but not MBFS.

### 1.    Against MBUSA

To state a plausible claim for relief under the Kansas lemon law, plaintiff must allege that:  he purchased a new vehicle that doesn't conform with its warranties; he timely reported the nonconformity; and defendants didn't repair the nonconformity within a reasonable number of attempts.  *See* Kan. Stat. Ann. § 50-645(b)–(c).  MBUSA argues that plaintiff "has not provided any supporting facts that MBUSA has not performed its obligations as directed under [Kan. Stat. Ann.] § 50-645 such that a cause of action can be recognized."  Doc. 12 at 3.  But plaintiff's Petition says otherwise.

Plaintiff has pleaded facts that "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Plaintiff alleges that MBUSA sold him a purportedly new SUV on March 12, 2024.  Doc. 1-1 at 2–3 (Pet. ¶ IV).  And plaintiff's Petition implies that the vehicle was under warranty.  When plaintiff contacted MBUSA's service department, MBUSA referenced "MBUSA's written warranty[.]"  *Id.* at 18 (Pl. Ex. B).  What's more, plaintiff alleges the vehicle presented persistent electrical malfunctions, along with damages and stains from an accident.  Doc. 1-1 at 3–5 (Pet. ¶¶ IV–V).  He asserts that he reported the electrical issues to MBUSA's "customer services" at some time between March and April 2024.[4]  *Id.* at 3 (Pet. ¶ IV).  And plaintiff alleges that MBUSA serviced the vehicle for

---

[4]    While plaintiff doesn't specify the length of the warranty, these dates are just a couple months after purchase.  Doc. 1-1 at 3 (Pet. ¶ IV) (vehicle purchase on March 12, 2024).  So, plaintiff has alleged that he reported the nonconformity to defendant within one year of purchase.  *See* Kan. Stat. Ann. § 50-645(b).

more than 60 days.  *Id.*  So, taking all these factual allegations as true, it appears plaintiff

plausibly has pleaded facts for each element of a Kansas lemon law claim.

MBUSA argues otherwise, presenting two lines of attack:  *First*, MBUSA contends that

plaintiff's Petition admits MBUSA fixed the alleged nonconformities.  Doc. 12 at 3.  *Second*,

MBUSA asserts that plaintiff's Petition demonstrates that he received all the relief contemplated

by the statute.  *Id.*  The court addresses defendant's two arguments, next.

### a.    MBUSA's Repairs

MBUSA appears to argue that plaintiff—because the Petition admits that the electrical

issue eventually was fixed—can't make out a lemon law claim.  Doc. 12 at 3 ("For example,

contrary to [Kan. Stat. Ann.] § 50-645(c), Plaintiff has not shown that the vehicle issues were not

correctable or that they weren't corrected within a reasonable amount of efforts.").  But MBUSA

doesn't mention § 50-645(d).  It presumes a defendant took a reasonable number of repair

attempts if certain conditions are met.

Section 50-645(d) lists three distinct circumstances giving rise to this presumption.  *First*,

the repair presumption, which arises when a manufacturer tries to repair the same nonconformity

a certain number of times without success.  Kan. Stat. Ann. § 50-645(d)(1).  *Second*, the out-of-

service presumption arises when the vehicle is out of service because of repairs for 30 days.  *Id.*

§ 50-645(d)(2).  *Third*, the 10+ attempts presumption, which arises when the manufacturer, its

agents, or dealers have tried to repair the nonconformity 10 or more times.  *Id.* § 50-645(d)(3).

The court focuses its attention merely on the out-of-service presumption.  The court also answers

whether MBUSA's eventual repair success negates the presumption here.  Making this

determination requires the court to interpret the Kansas lemon law.

It appears that the Kansas Supreme Court never has interpreted the state lemon law.  And

few cases from the Kansas Court of Appeals have done so.  With little guidance from Kansas law, the court looks in two places for interpretive help:  Kansas's state rules of statutory construction and high courts in other states.  Start with statutory construction.  "In a diversity action, the federal courts are required to apply the law of the forum state."  *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988).  "State rules of statutory construction should be applied by the federal courts in interpreting a state statute."  *Phelps v. Hamilton*, 59 F.3d 1058, 1071 n.23 (10th Cir. 1995); *Browning v. Cohen, McNeile & Pappas, P.C.*, No. 11-2611-EFM, 2012 WL 4210626, at *4 (D. Kan. Sept. 18, 2012) ("When construing these Kansas statutes, the Court will afford weight to Kansas's rules of statutory construction[.]" (quotation cleaned up)).  The Kansas Supreme Court begins the work of interpreting a statute by reviewing the plain language of the words on the page.  "When language is plain and unambiguous, there is no need to resort to statutory construction."  *Harsay v. Univ. of Kan.*, 430 P.3d 30, 36 (Kan. 2018) (internal quotation marks and citation omitted).

The court also can examine rulings by high courts in other states, interpreting similarly drafted lemon laws for guidance.  *Armijo*, 843 F.2d at 407 (concluding that where "the state's highest court has not addressed the issue presented, the federal court . . . should consider state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority").  The court begins by reviewing the statute itself, and then evaluates the weight of authority from outside Kansas.

A review of the statute's plain language indicates that MBUSA's eventual ability to repair the defect doesn't change the out-of-service presumption here.  Consider the relevant language:

> If the manufacturer receives actual notice of the nonconformity, it shall be
> presumed that a reasonable number of attempts have been undertaken to conform

> a motor vehicle to the applicable warranties, if: . . . the vehicle is out of service
> by reason of repair for a cumulative total of 30 or more calendar days during such
> [warranty] term or [one year] period, whichever is the earlier date[.]

Kan. Stat. Ann. § 50-645(d)(2).  The out-of-service presumption doesn't require the defect to

exist when the lawsuit is filed, or even after the 30 day out-of-service period.  Unlike the repair

presumption, which requires the nonconformity to exist after four or more repair attempts,

there's no such language in the out-of-service presumption.  Instead, the out-of-service

presumption arises because the consumer has lost the use of the vehicle for a significant period

of time, no matter whether the manufacturer, its agent, or the dealer fixes the issue eventually.

It's the time out of service that presumptively makes the vehicle a lemon.  On its face, the statute

appears to undercut MBUSA's first dismissal argument.  And courts in other states have reached

similar conclusions.

Several states have enacted lemon laws similar to Kansas's.  Like Kansas, they often

include repair and out-of-service presumptions.  *See, e.g.*, Vt. Stat. Ann. tit. 9, § 4172(g)

(presuming reasonable number of attempts when subject to repair at least three times or out of

service for 30 days); Ohio Rev. Code Ann. § 1345.73(A) (presuming reasonable number of

attempts when subject to repair three or more times, out of service for 30+ days, or eight or more

repair attempts made); N.Y. Gen. Bus. Law § 198-a(d) (presuming reasonable number of

attempts when subject to four or more repair attempts or out of service 30+ days).  And the high

courts in these states often conclude that a plaintiff needn't show continuing nonconformities to

avail the out-of-service presumption.  *See Pecor v. Gen. Motors Corp.*, 547 A.2d 1364, 1366 (Vt.

1988) ("There is no language in the statute indicating that a consumer must show existing

nonconformities when attempting to establish the presumption that a reasonable number of repair

attempts have been made by virtue of the vehicle having been out of service for thirty or more

days." (quotation cleaned up)); *Royster v. Toyota Motor Sales, U.S.A., Inc.*, 750 N.E.2d 531, 532 (Ohio 2001) ("[A] consumer enjoys a presumption of recovery . . . if his or her vehicle is out of service by reason of repair for a cumulative total of thirty or more calendar days in the first year of ownership regardless of whether the vehicle was successfully repaired at some point beyond that thirty-day period."); *cf. also DaimlerChrysler Corp. v. Spitzer*, 860 N.E.2d 705, 709 (N.Y. 2006) (recounting manufacturers' concession under the statute that "a consumer whose vehicle has been out of service for 30 or more days gains the presumption regardless of whether the vehicle is fixed after the 30-day mark").

Ultimately, this construction of the rule makes good sense. As the Ohio Supreme Court put it: "The *unavailability* of the new car is the key element. The fact that a consumer cannot drive a newly purchased vehicle for a full month in the first year of ownership defines the vehicle as a lemon." *Royster*, 750 N.E.2d at 535 (emphasis in original). And this rule aligns with the statute's text—which never requires the vehicle remain irreparable. *See generally* Kan. Stat. Ann. § 50-645. Once the out-of-service presumption attaches, the court must presume that defendant undertook a reasonable number of attempts to correct the nonconformity. That a defendant corrects the nonconformity after the 30-day out-of-service period doesn't change whether the presumption applies.

Here, plaintiff alleges that the SUV was in the shop for more than 60 days to service the electrical malfunctions, auto accident, and stained carpets. Doc. 1-1 at 3 (Pet. ¶ IV). Plaintiff's factual allegations thus trigger the presumption. And thanks to that presumption, plaintiff has alleged that defendants failed to correct the nonconformity within a reasonable number of attempts. And that's sufficient at the motion to dismiss stage to satisfy plaintiff's burden on the reasonable-number-of-attempts element.

### b.  Relief Available

*Second*, MBUSA's Motion to Dismiss argues plaintiff already has received the relief available under the lemon law statute:  that is, he traded the alleged lemon for a different vehicle. Doc. 12 at 3.  So, MBUSA concludes, plaintiff can't state a claim under the lemon law.  *Id.* at 3.

The Kansas lemon law requires manufacturers either to replace the vehicle with a comparable one or accept the vehicle's return and refund the consumer the full lease price, less a reasonable use allowance.  Kan. Stat. Ann. § 50-645(c).  Plaintiff concedes that defendants voided the original EQE lease contract.  Doc. 1-1 at 4 (Pet. ¶ IV).  Plaintiff also concedes that he returned the SUV to defendants.  *Id.*; *see also id.* at 48–49 (Pl. Ex. I) (reflecting trade in of Mercedes Benz EQE350X4 on July 6, 2024, in exchange for new Mercedes Benz GLE450W4). But plaintiff's Petition also alleges that the lease for the replacement vehicle—the new GLE— wasn't up to snuff either.  Plaintiff asserts that defendants paid three months of his original lease because the EQE was in the shop, but then re-charged him for those same payments under his new lease agreement.  *Id.* at 5 (Pet. ¶ V).  And, he alleges, defendants "forced" him to accept the new agreement, and he "wasn't allowed any information in writing" that clarified the amount he would receive for his trade-in.  *Id.*  Finally, he contends that defendants added taxes and fees to his new agreement and excluded his original trade-in of the Jeep Grand Cherokee.  *Id.*  Plaintiff seeks an order directing defendants to "re-negotiate the new terms and conditions on the Newest SUV."  *Id.* at 7 (Pet. ¶ VII).  So, while defendants replaced plaintiff's vehicle, plaintiff appears to allege that the terms changed or he didn't receive a refund of the full lease price when trading it in for the GLE.  Plaintiff's allegations reflect that there is—at least potentially—more relief on the table.  In short, it's not clear from plaintiff's allegations that he received all the relief contemplated under the lemon law.  So, plaintiff's lemon law claim against MBUSA survives

this second argument, as well.

At bottom, the court concludes it "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail[.]" *Hall*, 935 F.2d at 1110. So, the court must do so "despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* Neither MBUSA's eventual-repair argument nor its all-the-relief argument render plaintiff's claim here implausible. Plaintiff thus has alleged a plausible Kansas lemon law claim against MBUSA.

But the court can't say the same about his lemon law claim against MBFS, a claim addressed next.

### 2.    Against MBFS

According to MBFS, the Kansas lemon law strictly applies to *manufacturers*, not others involved in a vehicle's purchase. Doc. 14 at 4. And, MBFS argues, it merely provided financing for the purchase. *Id.* Plaintiff never alleged that MBFS "had anything to do with the actual maintenance, repair, or manufacture of the vehicle in question." *Id.* As explained below, MBFS's assessment of the Kansas lemon law is correct.

The Kansas Supreme Court hasn't decided whether the Kansas lemon law permits a cause of action against a financing company. But the Kansas Court of Appeals has, and it concluded that the lemon law "imposes liability only on the manufacturer of a nonconforming vehicle." *Ford Motor Credit Co., Inc. v. Sims*, 743 P.2d 1012, 1014 (Kan. Ct. App. 1987) (emphasis omitted). According to the Court of Appeals, the legislature "intended to provide a remedy against the manufacturer of the vehicle only[.]" *Id.* The statute plainly supports this interpretation. The lemon law statute indicates that while the "manufacturer, or its agents or

authorized dealers" may perform repairs, it's just "the manufacturer" who must provide the remedies. Kan. Stat. Ann. § 50-645(c). Nothing in the Kansas statute implies other entities fit within the definition of manufacturer, or that it's an ambiguous, undefined term. So, relying on the statute's plain language and persuasive authority from the Kansas Court of Appeals, the court predicts the Kansas Supreme Court would conclude a lemon law claim lies merely against a manufacturer.

Here, plaintiff alleges just that MBFS "provides financial services, markets it[s] financial services[,] and approves or disapproves financial services and customer services for all Mercedes-Benz products[.]" Doc. 1-1 at 2 (Pet. ¶ III). And plaintiff attached documents to his Petition reflecting MBFS's role in financing the vehicle. *See* Doc. 1-1 at 42–45 (Pl. Ex. G) (online payment confirmation to MBFS). According to plaintiff, MBFS tried to collect money from plaintiff and threatened "credit damages and garnishment[.]" *Id.* at 5 (Pet. ¶ V). But plaintiff never alleges that MBFS "manufactured" the car. As MBFS emphasizes, "the only discernable role that [MBFS] played in this transaction was to provide the financing." Doc. 14 at 4. Because plaintiff hasn't alleged MBFS manufactured the vehicle, plaintiff hasn't asserted a lemon law claim against MBFS under Kan. Stat. Ann. § 50-645. *See Ford Motor Credit*, 743 P.2d at 1014 (explaining Kansas lemon law "intended to provide a remedy against the manufacturer of the vehicle only"). The court thus dismisses this claim against defendant MBFS.

### C.    Negligence Claim

Plaintiff also alleges defendants' negligent conduct caused him significant emotional distress. *See* Doc. 1-1 at 5 (Pet. ¶ V) ("Plaintiff also invokes the doctrine of Respondent Ipsa Loquitor and contends that plaintiff emotional fear and mental distress injuries was not one that

would have occurred in the absence of negligence by the defendants and its employees."). Defendants never address plaintiff's negligence claim explicitly. So, the court needn't decide whether plaintiff has stated a negligence claim using the doctrine known as res ipsa loquitur. To be sure, defendants summarily argue that plaintiff "fails to make any statement supporting the elements of any legally cognizable claim[.]" Doc. 11 at 1; Doc. 13 at 1. But they train their arguments solely on the lemon law. *See generally* Doc. 11; Doc. 12; Doc. 13; Doc. 14; *see also* Doc. 12 at 3 ("As best as can be determined, Plaintiff is alleging violations of Kansas lemon law statutes . . . due to the fact that these are the only citations to statutory or common law causes of action."). Because defendants don't challenge plaintiff's negligence claim, the court doesn't evaluate it or dismiss it. *See Stocks v. City of Aurora*, No. 13-cv-01141-RBJ-CBS, 2014 WL 1661509, at *6 (D. Colo. Apr. 24, 2014) (declining to dismiss claims not addressed specifically by defendants in motion requesting dismissal of "all claims").

Summing up, plaintiff has stated a claim for relief under Kansas's lemon law against MBUSA—but not against MBFS. And, because defendants didn't address plaintiff's negligence claim, the court declines to evaluate or dismiss that claim now.

## IV. Conclusion

Defendants have shouldered their burden to avail themselves of the court's diversity jurisdiction. Plaintiff is a citizen of a different state than either defendant and the amount in controversy likely is greater than $75,000. Having subject matter jurisdiction, the court denies plaintiff's Motion to Remand (Doc. 18).

On the Motions to Dismiss (Doc. 11; Doc. 13), the court concludes plaintiff has stated a Kansas lemon law claim against MBUSA but not against MBFS. Although plaintiff plausibly alleges facts supporting the elements of a lemon law claim, the lemon law imposes liability just

on manufacturers.  Plaintiff alleges merely that MBFS was involved in financing the vehicle.  It doesn't appear from the Petition that MBFS was the vehicle's manufacturer.  Neither defendant addressed plaintiff's negligence claim, so the court declines to dismiss it.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion to Remand (Doc. 18) is denied.

**IT IS FURTHER ORDERED THAT** defendant Mercedes-Benz USA LLC's Motion to Dismiss (Doc. 11) is denied.

**IT IS FURTHER ORDERED THAT** defendant Mercedes-Benz Financial Services USA LLC's Motion to Dismiss (Doc. 13) is granted in part and denied in part.  Plaintiff's lemon law claim against MBFS is dismissed with prejudice.  But the court denies the motion to the extent it seeks complete dismissal of plaintiff's Petition without addressing plaintiff's negligence claim.

**IT IS SO ORDERED.**

**Dated this 11th day of February, 2025, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**